IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURA KAY HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-75-DES |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Laura Kay Harris ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 416.920(a)(4).  This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. § 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.   Claimant's Background and Procedural History

On August 5, 2019, Claimant protectively applied for supplemental security income benefits under Title XVI of the Act. (R. 15). Claimant alleges she has been unable to work since an amended alleged onset date of August 5, 2019, due to depression and anxiety. (R. 55-56, 230). Claimant was 37 years old on the date of the ALJ's decision. (R. 26-27). She has a college education and past work as a retail salesclerk. (R. 68, 231).

Claimant's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 81-91, 94-107, 117). ALJ Deirdre O. Dexter conducted an administrative hearing and issued a decision on May 12, 2021, finding Claimant not disabled. (R. 27, 44-78). The Appeals Council denied review on January 4, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on March 7, 2022. (Docket No. 2).

## III.   The ALJ's Decision

In her decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her application date of August 5, 2019. (R. 18). At step two, the ALJ found Claimant had severe impairments of major depressive disorder, obsessive-compulsive disorder ("OCD"), and generalized anxiety disorder. (R. 18). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 18-20).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations:

> [T]he claimant is able to understand, remember, and perform simple tasks consistent with SVP 1 and SVP 2 work, including work with a reasoning level of 3. She is able to sustain attention and concentration for up to two hours at a time when performing simple tasks. She is able to sustain the mental demands associated with performing simple tasks throughout an ordinary workday and workweek. The claimant is able to interact with supervisors as needed to receive

work instructions, but a job should not involve over-the-shoulder type supervision. She is able to work in proximity to coworkers but a job should not involve teamwork or other work where close communication or cooperation with coworkers is required in order to complete work tasks. The claimant would work best in a job where she is able to perform frequent periods of solitary work. A job should not involve interacting with the general public. The claimant is able to perform low stress work, meaning that the job should not involve tasks performed at a rapid production rate pace. She is able to adapt to ordinary and routine changes in a low stress work environment.

(R. 20).

At step four, the ALJ concluded Claimant could not return to her past relevant work. (R. 25-26). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including hand packager, warehouse worker, and laundry worker I. (R. 26-27). Accordingly, the ALJ concluded Claimant was not disabled. (R. 27).

**IV.   Issues Presented**

Claimant raises the following points of error in her challenge to the Commissioner's denial of benefits: (1) the ALJ improperly found Claimant did not meet or medically equal Listing 12.06 (Docket No. 13 at 3-5); (2) the ALJ failed to account for all her impairments and limitations in the RFC (*Id.* at 7-8); and (3) the ALJ failed to resolve a conflict between the VE's testimony and the reasoning level assigned by the Dictionary of Occupational Titles ("DOT") to the jobs identified at step five (*Id.* at 6-7). The Court finds no reversible error in the ALJ's decision.

**V.   Analysis**

   **A.   ALJ Properly Considered Listing 12.06**

Plaintiff asserts she "equals if not meets" Listing 12.06 and that it was error for the ALJ to find otherwise. (*Id.* at 3-5).

At step three of the sequential evaluation, the ALJ considers whether a claimant's severe impairment(s) meets or medically equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(iii), 20 C.F.R. pt. 404, subpt. P., app. 1. Listed impairments are "conclusively presumed to be disabling." *Lax,* 489 F.3d at 1085 (quotation omitted). Thus, if a claimant's medically severe impairment(s) meets or equals one of the listed impairments, she will be found disabled without considering her age, education, and work experience. 20 C.F.R. § 416.920(d). In order to meet a listing, the claimant's impairment(s) must satisfy all of the criteria of that listing. 20 C.F.R. § 416.925(c)(3). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ specifically considered Listing 12.06 (Anxiety and obsessive-compulsive disorders) in her decision at step three. (R. 18-20). In order to meet Listing 12.06, a claimant must satisfy the "paragraph A" medical documentation criteria, <u>and either</u> the "paragraph B" functional criteria or the "paragraph C" criteria for serious and persistent mental disorders.[1] Plaintiff asserts that she "comes very close to equaling" the "paragraph A" medical documentation criteria, but

---

[1] The "paragraph A" criteria for Listing 12.06 require medical documentation of one of the following four paragraphs: (1) Anxiety disorder, characterized by one or more of the following: (a) restlessness, (b) easily fatigued, (c) difficulty concentrating, (d) irritability, (e) muscle tension, or (f) sleep disturbance; (2) Panic disorder or agoraphobia, characterized by one or both: (a) panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences, or (b) disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces); (3) Obsessive-compulsive disorder, characterized by one or both: (a) involuntary, time-consuming preoccupation with intrusive, unwanted thoughts, or (b) repetitive behaviors that appear aimed at reducing anxiety; or (4) Excessive fear or anxiety concerning separation from those to whom you are attached. *See* 20 C.F.R. pt. 404, subpt. P., app. 1 § 12.06 (effective Apr. 2, 2021 to Oct. 5, 2023). The "paragraph B" criteria require proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The "paragraph C" criteria require that the claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of her daily life. *Id.*

does not mention or discuss the "paragraph B" functional criteria or the "paragraph C" criteria for serious and persistent mental disorders in her briefing. Because Claimant cannot meet or equal Listing 12.06 without satisfying either the "paragraph B" functional criteria or the "paragraph C" criteria for serious and persistent mental disorders and because her briefing is entirely silent on these issues, the Court finds Plaintiff's argument is not sufficiently developed to allow analysis and is therefore waived. *See Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.") (citations omitted).

In any event, a review of the ALJ's decision reflects the ALJ's conclusion that Claimant's impairments do not meet or medically equal Listing 12.06 is supported by substantial evidence. When analyzing the "paragraph B" criteria, the ALJ found Claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (R. 18-19). Because Claimant's mental impairments did not result in at least one extreme limitation or two marked limitations, the ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria. (R. 19). In reaching this conclusion, the ALJ specifically discussed Dr. Kenny Paris' October 2019 consultative mental status examination, Dr. Charles Lester's treatment notes, and the treatment notes from Plaintiff's counselor, Melissa Ratterree. (R. 18-19). As to the "paragraph C" criteria, the ALJ found no evidence of marginal adjustment, hospitalization, significant changes in medication, or inability to adapt to environmental changes or to demands that are not already a part of Claimant's daily life, noting Claimant relies solely on medication and therapy to address her mental impairments. (R. 19). The ALJ thus determined the "paragraph C" criteria were not met in this case. *Id*. Since neither the "paragraph B" nor "paragraph C" criteria were met, the ALJ

concluded Claimant's mental impairments did not meet or medically equal Listing 12.06. *Id*. Plaintiff points to no evidence the ALJ overlooked and does not contend the evidence the ALJ relied on is insufficient to support her conclusions at step three. Plaintiff's argument thus amounts to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (citations omitted).

      **B.**      **ALJ's RFC Determination is Supported by Substantial Evidence**

            **1.**      **Step-Three Moderate Mental Limitations**

Claimant asserts the ALJ erred by failing to account for her step-three finding of moderate limitation regarding concentrating, persisting, or maintaining pace in the RFC assessment. (Docket No. 13 at 8). However, an ALJ is not necessarily bound by her step-three findings when determining a claimant's RFC because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three. *Id*. Furthermore, "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015).

In this case, the ALJ considered Plaintiff's mental impairments and concluded that her major depressive disorder, OCD, and generalized anxiety disorder were severe impairments.

7

(R. 18). The ALJ then included skill level, social, and task limitations in the RFC assessment because of Claimant's severe mental impairments. (R. 20). In arriving at the mental RFC determination, the ALJ discussed the evidence of record related to Claimant's mental condition, including her hearing testimony, the examination findings of her mental health providers, and the state agency psychologists' opinions. (R. 20-25). The ALJ then found Claimant's allegations of disabling symptoms were inconsistent with: (1) her infrequent medication adjustments, (2) Dr. Lester's generally normal mental status examinations, (3) Dr. Paris' normal consultative mental status examination, (4) Ms. Ratterree's frequent notations that Claimant was focused during therapy sessions, and (5) the effectiveness of mediation in treating Claimant's symptoms. (R. 21-24). The ALJ then found "partially persuasive" the state agency psychologists' opinions, explaining that Claimant's reports to Dr. Lester and Ms. Ratterree of ongoing symptoms and the occasional findings of "fair concentration" in the record supported limiting Claimant to unskilled work rather than the semi-skilled work they identified. (R. 25). Plaintiff points to no records indicating her mental limitations were more severe than the ALJ indicated in the RFC assessment. Rather, Plaintiff simply relies on the fact that the ALJ found moderate limitations in concentrating, persisting, or maintaining pace at step three, which she then did not explicitly include in the RFC.

Contrary to Claimant's assertion, the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin,* 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Vigil,* 805 F.3d at 1204 ([T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."). As set forth above, the ALJ accommodated Claimant's mental impairments, including her moderate limitations in the four "paragraph B" areas. The ALJ not only included the co-worker and supervisor social limitations the state agency psychologists identified in the RFC, but also

included additional limitations regarding contact with the public, the type of supervision, teamwork, stress tolerance, and solitary work periods. (R. 20). Thus, unlike the ALJs in *Chapo v. Astrue,* 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012), and *Weiderhold v. Barnhart,* 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished), which Claimant relies on as support, the ALJ in this case included limitations beyond a general limitation to simple, unskilled work and explained her reasons for doing so. Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Vigil,* 805 F.3d at 1204, the Court finds here that the ALJ sufficiently accounted for Plaintiff's moderate limitation in concentration, persistence, or pace.

### 2. Problematic Thinking, Distractibility, and Mental Checking

Claimant next argues the ALJ failed to account for her problematic thinking, distractibility, and mental checking, asserting that she should have included additional limitations in the RFC for greater supervision and a slower pace. (Docket No. 13 at 7-8). Claimant points to some of Ms. Ratterree's counseling treatment notes as support. *Id.* As set forth above, the ALJ discussed Ms. Ratteree's records in her decision and thoroughly analyzed the work-related functional limitations of Claimant's mental impairments. The ALJ identified major depressive disorder, OCD, and generalized anxiety disorder as severe impairments at step two; discussed Claimant's testimony; and summarized the findings of her treating, consultative, and reviewing medical providers as part of the RFC analysis. (R. 18, 20-25). Importantly, the ALJ specifically discussed Ms. Ratterree's counseling notes wherein she noted Claimant's obsessive/compulsive thoughts, need for reassurance, mental checking, and self-doubting. (R. 21-23). Moreover, in assessing the RFC, the ALJ explained that Claimant's "mental symptoms such as generalized anxiety, social anxiety, performance anxiety, reduced concentration/focus, irritability, fatigue, easy frustration, feelings of

being overwhelmed and self-doubt, overthinking, poor stress response, depression, compulsive/obsessive behaviors, and difficulty interacting with others" supported a limitation to unskilled work. (R. 24). Thus, the ALJ considered all the relevant evidence related to Claimant's mental impairments and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking [her] findings to specific evidence."). Claimant fails to point to any evidence other than her own assertions to support the additional limitations she claims. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [she is] disabled."); *see also Hamilton v. Sec'y of Health & Hum. Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992) ("[a claimant's] testimony alone cannot establish a nonexertional impairment"). The longitudinal evidence in the record does not reflect further limitations; there is not medical source opinion in the record that identifies limitations greater than those included in the RFC assessment; and the ALJ thoroughly considered the evidence of record. The Court once again declines Claimant's invitation to reweigh the evidence.

      **C.**      **Conflict Between the VE's Testimony and the DOT**

Once Claimant met her burden of showing she could not perform her past relevant work, the Commissioner had the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax,* 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1171) (alteration omitted)). The ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform, so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC

assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

In this case, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above. (R. 20, 70). In response, the VE identified three medium, unskilled jobs a person with Claimant's age, education, and work history could perform: hand packager, warehouse worker, and laundry worker I. (R. 69-71). Based on this testimony, the ALJ concluded Plaintiff could perform the jobs of hand packager, warehouse worker, and laundry worker I and found these jobs existed in significant numbers in the national economy (R. 26-27). The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (R. 27).

Claimant asserts the ALJ erred in concluding that her RFC is compatible with the jobs of hand packager, warehouse worker, and laundry worker I, because an unresolved conflict exists between the RFC limitation of "simple tasks" and the reasoning level the DOT assigns to these jobs.[2] (Docket No. 13 at 5-7). The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and six representing the highest. *Id.*

---

[2] Claimant also asserts the RFC is internally inconsistent because it includes limitations for "simple tasks" as well as work with a "reasoning level of 3." (Docket No. 13 at 5). The Tenth Circuit has recognized an apparent conflict between jobs requiring level-three reasoning and an RFC limitation of "simple and routine work tasks." *Hackett,* 395 F.3d at 1176 (stating that an RFC limitation of simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," and reversing and remanding to allow the ALJ to address this "apparent conflict"). However, any error the ALJ made in this regard is harmless here because all the jobs the VE identified and the ALJ relied upon at step five have a reasoning level of two and do not pose a conflict, as explained *infra*.

The DOT assigns a reasoning level of two to the jobs the VE identified and the ALJ relied upon at step five. DOT §§ 920.587-019 (hand packager), 922.687-058 (warehouse worker), 361.684-014 (laundry worker). This means the jobs require the ability to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id*.

Plaintiff specifically asserts the RFC limitation of "simple tasks" restricts her to jobs with a reasoning level of one, and thus a conflict exists between the RFC and the level-two reasoning required by jobs the VE identified at step five. Plaintiff relies on the Social Security Administration's Program Operations Manual System ("POMS") as support for the premise that a limitation to simple tasks eliminates jobs requiring level-two reasoning. *See* POMS § DI 25020.010(A)(3) (unskilled work requires the abilities to "understand, carry out, and remember simple instructions" and to "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"); POMS § DI 25020.010(B)(4) (semiskilled and skilled work require the ability to understand, remember, and carry out "detailed instructions").

Plaintiff's argument is not persuasive. The Tenth Circuit has stated that an RFC limitation of simple and routine tasks "appears" consistent with level-two reasoning. *Hackett,* 395 F.3d at 1176. The Tenth Circuit has also determined that an RFC limitation of "simple, repetitive and routine work" should not "be construed as a limitation to jobs with a reasoning-level rating of one." *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished). Here, Claimant makes the same argument the Tenth Circuit rejected in *Stokes*, and her reliance on the POMS is misplaced. *See, e.g., Rainwater v. Colvin,* No. 15-CV-491-GKF-FHM, 2016 WL 1146894, at *2 (N.D. Okla. Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2 jobs are not inconsistent with" an RFC limitation of understanding, remembering,

and carrying out simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). Plaintiff fails to persuasively explain how her RFC is inconsistent with a GED reasoning level of two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*. Accordingly, there is no conflict between Claimant's RFC limitation of "simple tasks" and the level-two reasoning required by the hand packager, warehouse worker, and laundry worker I jobs.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this  24th  day of July, 2023.

            D. EDWARD SNOW
            UNITED STATES MAGISTRATE JUDGE